# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46605-8-II |
| Respondent, | |
| v. | |
| ZAIDA YESENIA CARDENAS-FLORES, | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury returned a verdict finding Zaida Cardenas-Flores guilty of second degree assault of a child. Cardenas-Flores appeals her conviction, asserting that (1) the State failed to establish the corpus delicti of second degree assault of a child with evidence independent of her statements to police, (2) the State failed to present sufficient evidence that she intentionally assaulted the victim, (3) the State failed to prove jurisdiction was proper with sufficient evidence that the crime had occurred in Washington, (4) the trial court's jury instruction defining "assault" relieved the State of its burden to prove second degree assault of a child, and (5) the prosecutor committed misconduct in closing argument by arguing that Cardenas-Flores failed to give a plausible explanation for the victim's injuries. Cardenas-Flores also asserts that (6) her defense counsel was ineffective for (a) failing to object to the admission of her statements on corpus delicti grounds and (b) failing to object to the prosecutor's alleged misconduct in closing argument. Finally, Cardenas-Flores appeals her sentence, asserting that the sentencing court erred by imposing legal financial obligations (LFOs) without first inquiring about her ability to pay the LFOs. We affirm Cardenas-Flores's conviction but remand for

resentencing solely on the LFO issue, for the sentencing court to make an individualized inquiry into Cardenas-Flores's current or likely future ability to pay.

FACTS

Cardenas-Flores gave birth to CA in late November, 2013. CA's father, Carlos Austin, lived with Cardenas-Flores in Vancouver. On December 3, Cardenas-Flores brought CA to the doctor for his first regular medical exam, which exam showed that CA's health was normal. At the December 3 visit, Cardenas-Flores stated she was having "some difficulty at home with the baby because . . . there wasn't a lot of support in the Vancouver area." Report of Proceedings (RP) at 57.

On December 18, Austin accidently rolled over onto CA's leg while the two were sleeping in bed. After the accident, Cardenas-Flores and Austin brought CA to the emergency room to have his leg examined. Dr. Jonathan Stein examined CA at the emergency room and had X-rays taken of CA's left leg. After reviewing the X-rays, Stein determined that CA's leg was normal and did not have any fractures or other abnormalities.

On December 20, Cardenas-Flores brought CA to the doctor for a regular wellness check and to follow up on CA's leg injury. CA's doctor examined CA's leg and reviewed the emergency room X-rays. CA's doctor noted some mild swelling on CA's left foot and confirmed that his December 18 X-rays did not show any fractures on his left leg.

On December 23, when CA was approximately 3 weeks old, Cardenas-Flores and Austin again brought CA to the emergency room, stating as their chief complaint that CA's left thigh had swollen. New X-rays were taken of CA's leg. Dr. Cathleen Lang examined CA and saw that his left thigh was swollen and that he was in obvious pain whenever his leg was moved.

2

Lang reviewed CA's new X-rays and found that CA had a displaced fracture on his left femur, meaning that "the two pieces of bones [were] apart." RP at 64. Lang also noted that CA's femur fracture occurred recently because it did not show any signs of healing, which would typically develop within seven to ten days. Lang stated that, during the period of time when the fracture showed no signs of healing, CA would be in "excruciating pain" any time his diaper was changed or his leg moved. RP at 69. Lang believed that CA's injury could have been caused by someone yanking and turning CA's leg while he was stabilized.

Lang spoke with Cardenas-Flores and Austin to determine what could have caused CA's injury. The only explanation for CA's injury that Cardenas-Flores and Austin offered was the December 18 rollover accident. Although Cardenas-Flores and Austin stated that the only explanation for CA's injury was the rollover accident, Austin told Lang that Cardenas-Flores had heard "a cracking or popping sound in [CA's] leg" before taking him to the hospital. RP at 134.

Lang did not find Cardenas-Flores's and Austin's explanation for CA's injury plausible in light of the December 18 X-rays that did not show CA had a displaced femur fracture after the rollover accident. Lang also did not believe that CA could have suffered a displaced femur fracture from a rollover accident because the displaced femur fracture was likely caused by a combination of compression plus torsion or a twist. Additionally, Lang stated that the femur bone is one of the largest and strongest bones in the body and that a displaced femur fracture would require "more force than what's going to be going on in normal everyday life." RP at 80. Based on the nature of CA's injury and on her discussions with Cardenas-Flores and Austin, Lang became "highly concern[ed]" that CA's injury was non-accidental, and she contacted the police and Child Protective Services. RP at 81.

That same day or early the next morning, Cardenas-Flores agreed to speak with Vancouver Police Detective Deanna Watkins in a hospital conference room. Sergeant Barb Kipp and Detective Brendan McCarthy were also present in the room. Cardenas-Flores told the officers about the events that transpired between the December 18 rollover incident and the December 23 emergency room visit. When Cardenas-Flores told the officers about the rollover incident, the officers responded that the rollover could not have caused CA's injury based on the nature of the injury and on the earlier X-rays that did not show a fracture.

At some point during the interview, Cardenas-Flores stated that she may have "tugged at [CA's leg] too hard while [he was] in the car seat." RP at 186. Cardenas-Flores further explained that CA may have been injured when she tried to get him out of the car seat too quickly while the car seat strap was not yet unfastened. Cardenas-Flores then told the officers that she "didn't want to lie" and that "she wanted to believe the car seat caused [CA's] injury, but . . . that wasn't what caused it." RP at 200. Cardenas-Flores explained to the officers that she had pushed CA's left leg out and down to try to straighten it so the leg would fit under CA's car seat strap. Cardenas-Flores stated that after pushing CA's leg out and down, she "knew [she] did something" because CA started crying in a manner different from his normal cry. RP at 202. Cardenas-Flores further stated that after being told about the broken femur, "she knew that it was from that incident, when she pushed his leg down." RP at 202.

The State charged Cardenas-Flores by amended information with second degree assault of a child, alleging that the crime took place between December 20, 2013 and December 23,

2013. At trial the State called Lang, Stein, Watkins,[1] and McCarthy, who all testified consistently with the facts as stated above.

Cardenas-Flores and Austin testified for the defense. Cardenas-Flores testified that, after CA's December 20 doctor visit, she drove Austin and CA to Quincy, Washington to pick up Austin's three other children. Cardenas-Flores stated it was a ten hour round trip drive to Quincy and back to Vancouver and that CA did not seem particularly fussy during the trip. She said that the family arrived back at the home at around 4:30 PM on December 21. Cardenas-Flores stated that, although CA was fussy about his leg, she did not see any progression in CA's leg injury that evening or the following morning, December 22. Cardenas-Flores also stated that CA spent most of this time in his car seat because he appeared uncomfortable when moving around but that she had to take him out of the car seat to breastfeed and change his diaper every few hours.

Cardenas-Flores testified that the family drove to Salem, Oregon on the morning of December 22 to attend their church and that CA slept in his car seat during the church service. Cardenas-Flores stated that the family went to Austin's mother's home in Salem after the service and returned to Vancouver that evening. Cardenas-Flores further stated that CA remained in his car seat except when she was feeding or changing him. Cardenas-Flores said that the family slept in late on Monday, December 23 and left the home with CA in the late afternoon to run some errands. Cardenas-Flores also said that she heard a cracking in CA's leg sometime on December 23.

---

[1] Prior to Watkins's testimony, the trial court held a CrR 3.5 hearing to determine the admissibility of Cardenas-Flores's statements to police. Cardenas-Flores's defense counsel conceded at the hearing that her statements to police were admissible and did not raise any corpus delicti issues.

Regarding her statements to police, Cardenas-Flores testified that she continually told the officers throughout two hours of questioning that CA sustained his leg fracture during the December 18 rollover accident but that the officers suggested the accident could not have caused CA's fracture. Cardenas-Flores denied taking CA out of his car seat too quickly or tugging at his leg, but she admitted that she had told this to the officers.[2] Cardenas-Flores stated that she lied to the police officers about these events because she felt pressured to provide an explanation for CA's injuries that the officers would accept as true. Cardenas-Flores maintained that the December 18 rollover accident was the cause of CA's femur fracture.

Austin testified that between December 18 and December 23, he never saw Cardenas-Flores get stressed or hurt CA in any way. Austin further testified that after the rollover accident, he became worried about injuring CA again and, therefore, did not provide for CA's care without Cardenas-Flores's assistance. On cross-examination, Austin testified that he was "watching [CA] every second he was in his car seat on Monday, the 23rd." RP at 359.

During closing, the State argued:

> Now, defendant got up there, [Austin] got up there, they never gave a plausible explanation for how this kid broke his femur. And it seems like this entire time, [Austin] and the defendant were the ones around the kid. Seems like they would have an idea of how a femur gets broken. And Dr. Stein and Dr. Lang said it would be immediately obvious when this injury happens. The kid would be crying differently than normal, the kid would be acting differently.

RP at 405. Defense counsel did not object to this argument.

The trial court provided the jury with the following instruction, to which Cardenas-Flores did not object:

---

[2] Cardenas-Flores denied telling the officers that she had pushed CA's leg out and down, stating that she told them she had twisted CA's leg.

> An assault is an intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking or [sic] is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.

Clerk's Papers (CP) at 20.

The jury returned a verdict finding Cardenas-Flores guilty of second degree assault of a child. As part of her sentence, the trial court imposed $3,109 in LFOs. The trial court checked a box next to a preprinted language on Cardenas-Flores's judgment and sentence finding that she "is presently indigent but is anticipated to be able to pay financial obligations in the future." CP at 30. Cardenas-Flores did not object to this finding at sentencing. Cardenas-Flores appeals her conviction and sentence.

## ANALYSIS

### I. CORPUS DELICTI

Cardenas-Flores first asserts that the trial court erred by admitting evidence of her statements to police because the State failed to establish the corpus delicti of second degree assault of a child with evidence independent of her statements.[3] In response, the State asserts

---

[3] Although Cardenas-Flores frames her corpus delicti challenge as concerning the sufficiency of evidence used to convict her of second degree assault of a child, it is clear from the context of her arguments that she is challenging the jury's consideration of her statements as evidence at trial, which challenge necessarily concerns the evidentiary admission of her statements. *See, e.g.*, Br. of Appellant at 23 ("A factfinder may not consider an accused person's statements unless the prosecution *prima facie* establishes the *corpus delicti* of the charged crime by evidence independent of those statements."). Moreover, when considering whether the State presented sufficient evidence to sustain a conviction, we examine *all* the evidence at trial, and all the inferences that may reasonably be drawn from that evidence, in a light most favorable to the State. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). Therefore, unless a criminal defendant successfully demonstrates that certain evidence was improperly admitted at trial, we must consider that evidence in determining whether the totality of evidence at trial was constitutionally sufficient to sustain a conviction. Accordingly, we must first address whether

7

that Cardenas-Flores waived any challenge to the admission of her statements on corpus delicti grounds by failing to raise the issue at trial. We agree with the State that Cardenas-Flores waived her contention with the admissibility of her statements by failing to raise a corpus delicti challenge to the evidence at trial.

The corpus delicti rule is a judicially created rule of evidence that sets forth the standard for laying a proper foundation before admitting a criminal defendant's confession as evidence at trial. *State v. C.D.W.*, 76 Wn. App. 761, 763, 887 P.2d 911 (1995). The purpose of the corpus delicti rule is that, standing alone, a defendant's statement is not sufficient to support the inference that the defendant committed the charged crime. *State v. Dow*, 168 Wn.2d 243, 249, 227 P.3d 1278 (2010); *State v. Aten*, 130 Wn.2d 640, 656, 927 P.2d 210 (1996). The corpus delicti rule is not mandated by either the Washington Constitution or the United States Constitution. *Dow*, 168 Wn.2d at 249-50 (citing *Opper v. United States*, 348 U.S. 84, 93-94, 75 S. Ct. 158, 99 L. Ed. 101 (1954)). Because the corpus delicti rule is not constitutionally mandated, we "may refuse to review any claim of error [regarding corpus delicti] which was not raised in the trial court." RAP 2.5; *C.D.W.*, 76 Wn. App. at 763-64.

Cardenas-Flores argues that she may raise a corpus delicti issue for the first time on appeal under RAP 2.5(a)(2) because the doctrine involves sufficiency of the evidence. Cardenas-Flores, and the concurrence, rely in part on *Dow* in asserting that she may raise a corpus delicti challenge for the first time on appeal. Concurrence at 24-25. We disagree with this analysis for three reasons. First, the issue of waiver and the preservation requirements of

---

Cardenas-Flores's statements were properly admitted at trial, or whether she had waived any challenge to the admission of her statements, before turning to whether the State presented sufficient evidence to convict her of second degree assault of a child.

RAP 2.5 was not before the *Dow* court as the defendant had objected to admission of his confession on corpus delicti grounds at trial. *See State v. Dow*, 142 Wn. App. 971, 974, 176 P.3d 597 (2008) (establishing the fact that defendant had "moved to suppress the statements he made during a police interview, arguing that these statements were inadmissible because of lack of *corpus delicti*") (emphasis added), *rev'd*, 168 Wn.2d 243. Second, it is well established that a claim of insufficient evidence in support of a conviction is an issue of constitutional magnitude that an appellant may raise under RAP 2.5(a)(3) for the first time on appeal. *State v. Baeza*, 100 Wn.2d 487, 488, 670 P.2d 646 (1983). Thus, in reaffirming the firmly established principle that the corpus delicti rule is "not constitutionally mandated," the *Dow* court implicitly rejected the concurrence's proposition that RAP 2.5(a)(3) allows Cardenas-Flores to raise the issue for the first time on appeal. *Dow*, 168 Wn.2d at 249.[4] Accordingly, any error in admitting evidence subject to the corpus delicti rule does not fall under RAP 2.5(a)(3)'s exception for a "manifest error *affecting a constitutional right*." (Emphasis added). Finally, unlike here, the State in *Dow* conceded at trial and on appeal that the only evidence it had in support of the defendant's crime was the defendant's confession. 168 Wn.2d at 246. Thus, in resolving the defendant's *preserved*

---

[4] Cardenas-Flores also asserts that our Supreme Court's remand order in *State v. Grogan*, 168 Wn.2d 1039, 234 P.3d 169 (2010) suggests that *Dow* had overturned prior Court of Appeals precedent that held a defendant must object to the admission of statements on corpus delicti grounds to preserve the issue for appeal. Although our Supreme Court had remanded *State v. Grogan*, 147 Wn. App. 511, 519, 195 P.3d 1017 (2008) (holding in part that defendant waived corpus delicti challenge by failing to object at trial), for reconsideration in light of *Dow*, the remand order did not explicitly state that *Grogan*'s waiver analysis was incorrect. Accordingly, we do not consider the *Grogan* remand order in determining whether Cardenas-Flores waived her contention with the admission of her statements by failing to object on corpus delicti grounds at trial.

9

corpus delicti claim, the *Dow* court's remand for reversal of his conviction appears to have been done as a matter of judicial efficiency rather than to announce overturning decades of appellate court precedent holding that a corpus delicti claim is waived if not preserved in the trial court. *C.D.W.*, 76 Wn. App. at 763-64.

We decline to address this issue for the first time on appeal.[5]

## II. SUFFICIENCY OF THE EVIDENCE

Next, Cardenas-Flores asserts that the State failed to present sufficient evidence that (1) she intentionally assaulted CA and (2) the assault took place in Washington. We disagree.

---

[5] We note that the requirement of an objection at trial to the admission of the defendant's statements on corpus delicti grounds preserves the State's ability to present additional evidence establishing the corpus delicti. *State v. Pietrzak*, 110 Wn. App. 670, 680, 41 P.3d 1240 (2002); *State v. McConville*, 122 Wn. App. 640, 649, 94 P.3d 401 (2004). Absent such a requirement, defense counsel would have a clear incentive to remain silent about the State's lack of evidence supporting the corpus delicti at trial so as to secure a reversal of the client's conviction on appeal. This result does not support the interests of justice or the judicial efficiency created by requiring the resolution of issues at the trial level. An objection at trial to the admission of a defendant's statements on corpus delicti grounds also preserves the State's ability to seek admission of the statements under RCW 10.58.035, which statute permits admission of defendant's statements even where "independent proof of the corpus delicti is absent." *See Dow*, 168 Wn.2d at 254 (holding that trial court properly admitted defendant's statements under RCW 10.58.035 despite lack of independent evidence establishing the corpus delicti but reversing conviction for lack of sufficient evidence). Additionally, it appears that several other states addressing this issue have held that corpus delicti arguments must be preserved for appeal by raising a timely objection at trial. *See, e.g.*, *State v. Mann*, 768 S.E.2d 138, 143 (N.C. Ct. App. 2014); *Scott v. State*, 147 So.3d 5, 6 (Fla. L. Weekly 2013); *Nowling v. State*, 955 N.E.2d 854, 863 n.4 (Ind. 2011); *State v. Puckett*, 191 Ohio App. 3d 747, 754, 947 N.E.2d 730 (2010) (failure to object waives all but plain error); *State v. Bough*, 152 S.W.3d 453, 465 (Tenn. 2004); *Commonwealth v. Chambliss*, 847 A.2d 115, 120 (Pa. Super. Ct. 2004); *State v. Edwards*, 116 S.W.3d 511, 545 (Mo. 2003); *People v. Ish*, 252 Mich. App. 115, 116, 652 N.W.2d 257 (Mich. Ct. App. 2002) (failure to object waives all but plain error); *People v. Sally*, 12 Cal.App.4th 1621, 1628, 16 Cal. Rptr.2d 161 (1993).

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). We interpret all reasonable inferences in the State's favor. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). Direct and circumstantial evidence carry the same weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). Credibility determinations are for the trier of fact and are not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

A.    *Intent*

To convict Cardenas-Flores of second degree assault of a child as charged here, the State had to prove beyond a reasonable doubt that she (1) intentionally assaulted another person (2) who was then less than 13 years old and thereby (3) recklessly inflicted (4) substantial bodily harm. RCW 9A.36.130(1)(a); RCW 9A.36.021(1)(a); *State v. Hovig*, 149 Wn. App. 1, 7-8, 202 P.3d 318 (2009). Cardenas-Flores challenges only the element that she intentionally assaulted CA, arguing that the State's evidence did not prove that she intended to cause CA substantial bodily injury. This argument misconstrues the State's burden of proving intent where, as here, it charges second degree assault of a child based on an actual battery because an "[a]ssault by battery . . . does not require specific intent to inflict substantial bodily harm." *State v. Daniels*, 87 Wn. App. 149, 155, 940 P.2d 690 (1997).[6] Thus, where the State charges second degree

---

[6] Our Supreme Court recognizes three forms of assault in Washington:

> "(1) an attempt, with unlawful force, to inflict bodily injury upon another [attempted battery]; (2) an unlawful touching with criminal intent [actual battery]; and (3) putting another in apprehension of harm whether or not the actor intends to inflict or is capable of inflicting that harm [common law assault]."

assault of a child based on an actual battery, it need only prove beyond a reasonable doubt that the defendant intended to do the physical act constituting an assault.[7] *State v. Keend*, 140 Wn. App. 858, 867, 166 P.3d 1268 (2007); *State v. Hall*, 104 Wn. App. 56, 62, 14 P.3d 884 (2000).

Here, Watkins testified that Cardenas-Flores told officers that she had pushed CA's leg down and out to straighten it and that, after pushing CA's leg in this manner, CA began crying differently than his normal cry. Watkins further testified that Cardenas-Flores told officers that she knew her conduct in pushing CA's leg down was the cause of his broken femur. This was sufficient evidence from which the jury could find Cardenas-Flores intentionally did the physical

---

*State v. Wilson*, 125 Wn.2d 212, 218, 883 P.2d 320 (1994) (alteration in original) (quoting *State v. Bland*, 71 Wn. App. 345, 353, 860 P.2d 1046 (1993)). The State here charged Cardenas-Flores with second degree assault of a child based on an actual battery. RCW 9A.36.021(1)(a).

[7] Cardenas-Flores asserted in her brief and at oral argument that *State v. Jarvis*, 160 Wn. App. 111, 246 P.3d 1280 (2011), stands for the proposition that the State is required to present evidence of criminal intent to prove an assault by battery. *State v. Cardenas-Flores*, No. 46605-8-II (Jan. 12, 2016) at 1 min., 20 sec.-1 min., 34 sec. But *Jarvis* does not stand for the proposition that an assault by battery requires proof that the defendant intended to commit an assault and, instead, rejected this very proposition, stating:

> Jarvis argues that "intent" requires some element of malice or ill will. She cites no authority for this proposition. In fact, the intent required for assault is merely the intent to make physical contact with the victim, not the intent that the contact be a malicious or criminal act. *State v. Hall*, 104 Wn. App. 56, 62, 14 P.3d 884 (2000).

160 Wn. App. at 119. Cardenas-Flores also asserted at oral argument that, absent a requirement that the State prove criminal intent to commit an assault, a parent could be convicted of fourth degree assault for simply providing standard caregiving duties such as dressing a child because such duties require an intent to make physical contact with another person. *Cardenas-Flores*, No. 46605-8-II (Jan. 12, 2016) at 2 min., 12 sec.-3 min., 14 sec. This assertion overlooks that an intentional touching must be "'harmful or offensive'" to constitute an assault. *Jarvis*, 160 Wn. App. at 119 (quoting *State v. Tyler*, 138 Wn. App. 120, 130, 155 P.3d 1002 (2007)). And, here, the jury was so instructed. Because an intentional touching must be harmful or offensive to constitute an assault, Cardenas-Flores's concern regarding a parent's standard caregiving duties is unfounded.

act (forcefully straightening CA's leg) that resulted in his substantial bodily injury and, thus, constituted an assault by battery. Although Cardenas-Flores recanted her statements to police at trial, it was for the jury to decide the credibility of both her initial statements and of her later recantation at trial. Accordingly, we hold that the State presented sufficient evidence in support of the intent element required to prove second degree assault of a child by battery.

B.     *Jurisdiction*

In every criminal prosecution, the State carries the burden of proving jurisdiction beyond a reasonable doubt. *State v. Norman*, 145 Wn.2d 578, 589, 40 P.3d 1161 (2002). In general, the State satisfies this burden by proving that the alleged crime was committed in Washington State. *Norman*, 145 Wn.2d at 589; *see also* RCW 9A.04.030(1) (Stating in relevant part that jurisdiction exists over "[a] person who commits in the state any crime, in whole or in part."). Although the evidence at trial showed that Cardenas-Flores and CA were in Oregon during a portion of the charging period, there was sufficient evidence at trial to support the jury's finding that the crime occurred in Washington.

Here, Cardenas-Flores testified that she and her family returned to Washington from Oregon on the evening of December 22 and that she heard the cracking in CA's leg and his subsequent unusual cry the following day. This testimony, coupled with Cardenas-Flores's admission to police that she had tried to straighten CA's leg and that she knew this act caused CA's leg injury, was sufficient evidence from which the jury could find that the crime occurred on December 23, while Cardenas-Flores and CA were in Washington. Moreover, Lang's testimony that CA's femur fracture would cause excruciating pain, together with Cardenas-Flores's testimony that while in Oregon CA slept through a church service and was around

13

Austin's family members, further supports the inference that the assault did not occur during that Oregon trip. Accordingly, we hold that the State presented sufficient evidence to establish proper jurisdiction.

### III. ASSAULT INSTRUCTION

Next, Cardenas-Flores asserts that the trial court's jury instruction defining assault lowered the State's burden of proving that she committed second degree assault of a child against her son. However, Cardenas-Flores did not object to the trial court's assault instruction at trial. Even assuming without deciding that the issue is properly before us under RAP 2.5(a)(3), Cardenas-Flores fails to show any error in the trial court's assault instruction.

"Jury instructions are 'sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.'" *State v. Douglas*, 128 Wn. App. 555, 562, 116 P.3d 1012 (2005) (quoting *Bodin v. City of Stanwood*, 130 Wn.2d 726, 732, 927 P.2d 240 (1996)). Here, the trial court instructed the jury:

> An assault is an intentional touching or striking of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking or [sic] is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.

CP at 20.

Cardenas-Flores asserts that this standard instruction defining an assault by battery, taken from 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 35.50, at 164 (3d ed. Supp. 2014-2015) (WPIC) was inadequate when applied to an assault by battery committed by a parent against his or her own infant. Specifically, Cardenas-Flores argues that the assault instruction was inadequate because it did not require the jury to find (1) a specific intent to inflict

14

substantial bodily injury or (2) an unlawful touching. Cardenas-Flores does not cite to any case or statute supporting her claim that the standard assault definition is inadequate in prosecutions for second degree assault of a child. And, as we addressed above, an assault by battery does not require specific intent to inflict substantial bodily harm.

Cardenas-Flores asserts that the trial court was required to include in its standard assault instruction the bracketed phrase "with unlawful force" because, in general, parents are privileged to touch their children in a manner that autonomous adults may find offensive. See note on use following WPIC 35.50 at 165 ("Include the phrase 'with unlawful force" if there is a claim of self defense or other lawful use of force."). While use of the "with unlawful force" phrase may be appropriate in an assault of a child prosecution against a parent asserting that the use of force against his or her child was lawful, here Cardenas-Flores denied that her act of touching CA caused his injury, instead contending that CA's injury was caused by Austin's earlier rollover accident. Absent a claim that she used lawful force when recklessly causing CA's substantial bodily injury, use of the phrase "with unlawful force" would have resulted in the jury having to speculate as to what conduct constitutes lawful force.

Therefore, inclusion of the bracketed language would have been confusing and misleading to the jury. Accordingly, we hold that the standard assault instruction as provided here adequately informed the jury of the applicable law and allowed Cardenas-Flores to argue her theory of the case, and thus, Cardenas-Flores fails to demonstrate instructional error warranting a new trial.

## IV. PROSECUTORIAL MISCONDUCT

Next, Cardenas-Flores asserts that the prosecutor committed misconduct in closing argument by arguing that she had a burden to provide a plausible explanation for CA's injury. We disagree.

To succeed on her prosecutorial misconduct claim, Cardenas-Flores must demonstrate both that the prosecutor's conduct was improper and that the improper conduct resulted in prejudice. *State v. Emery*, 174 Wn.2d 741, 759-61, 278 P.3d 653 (2012). Additionally, because she did not object at trial to the conduct of which she complains on appeal, Cardenas-Flores waived her argument unless she carries the additional burden of showing that the alleged misconduct was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61.

During closing arguments, "[c]ounsel are permitted latitude to argue the facts in evidence and reasonable inferences" flowing from those facts. *State v. Smith*, 104 Wn.2d 497, 510, 707 P.2d 1306 (1985). And we review allegedly improper closing arguments by the prosecutor "within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). In general, a prosecutor's argument that shifts the burden to the defense is improper and amounts to flagrant and ill intentioned misconduct. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 713, 286 P.3d 673 (2012).

Cardenas-Flores contends that the following argument by the prosecutor improperly shifted the burden to the defense to provide a plausible explanation for CA's displaced femur fracture:

16

>  Now, defendant got up there, [Austin] got up there, they never gave a plausible explanation for how this kid broke his femur. And it seems like this entire time, [Austin] and the defendant were the ones around the kid. Seems like they would have an idea of how a femur gets broken. And Dr. Stein and Dr. Lang said it would be immediately obvious when this injury happens. The kid would be crying differently than normal, the kid would be acting differently.

RP at 405. When read in context, the prosecutor's argument did not improperly shift the burden to the defense to provide a plausible explanation for CA's injury. Instead, the prosecutor merely argued that the explanation for CA's injury that Cardenas-Flores and Austin had provided during their trial testimony was not plausible in light of evidence that CA's femur fracture was not present in his previous X-ray and in light of medical testimony that the rollover accident would not have likely caused that injury.

Although defendants are not obligated to testify or produce evidence at trial, if the defendant choses to testify, that testimony is not immunized from attack by the prosecution. *State v. Vassar*, 188 Wn. App. 251, 260, 352 P.3d 856 (2015). "On the contrary, the evidence supporting a defendant's theory of the case is subject to the same searching examination as the State's evidence." *State v. Contreras*, 57 Wn. App. 471, 476, 788 P.2d 1114 (1990). Because Cardenas-Flores elected to testify about all the events that transpired with CA during the State's charging period and because she stated that the rollover accident was the only explanation for CA's fractured femur, the prosecution was permitted to argue that her explanation was not plausible in light of the other evidence at trial. Accordingly, we hold that Cardenas-Flores cannot demonstrate that the prosecutor committed misconduct during closing argument.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Cardenas-Flores asserts that her defense counsel was ineffective for failing to raise a corpus delicti challenge to the admission of her statements at trial. Cardenas-Flores also asserts

that her defense counsel was ineffective for failing to object to the prosecutor's alleged

misconduct in shifting the burden of proof during closing argument and for failing to request a

limiting instruction in response to the same. Again, we disagree.

To demonstrate ineffective assistance of counsel, Cardenas-Flores must show that her

defense counsel's conduct was deficient and that the deficient performance resulted in prejudice.

*State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). To show prejudice, Cardenas-

Flores must show a reasonable probability that, but for counsel's purportedly deficient

performance, the outcome of the trial would have differed. *Reichenbach*, 153 Wn.2d at 130. If

Cardenas-Flores fails to establish either prong on the ineffective assistance of counsel test, we

need not examine the other prong. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

A. *Corpus Delicti*

Cardenas-Flores first asserts that her defense counsel was ineffective for failing to

challenge the admission of her statements on corpus delicti grounds at trial. Because the State

presented sufficient evidence independent of Cardenas-Flores's statements to establish the

corpus delicti of second degree assault of a child, Cardenas-Flores cannot demonstrate the

requisite prejudice to support her ineffective assistance of counsel claim.

In determining whether there is sufficient independent evidence under the corpus delicti

rule, we review the evidence in a light most favorable to the State. *State v. Aten*, 130 Wn.2d 640,

658, 927 P.2d 210 (1996). The independent evidence does not need to be sufficient to support a

conviction but must provide prima facie corroboration of the crime described in a defendant's

incriminating statement. *Aten*, 130 Wn.2d at 656. Additionally, the State may prove the corpus

delicti by either direct or circumstantial evidence. *Aten*, 130 Wn.2d at 655. Prima facie

corroboration of a defendant's incriminating statement exists if the independent evidence provided by the State supports a "logical and reasonable inference" of the facts the State seeks to prove. *State v. Vangerpen*, 125 Wn.2d 782, 796, 888 P.2d 1177 (1995). Further, "'once the defendant elects to present evidence and that evidence establishes the corpus delicti, [s]he . . . cannot prevail on appeal.'" *State v. McPhee*, 156 Wn. App. 44, 60-61, 230 P.3d 284 (2010) (alteration in original) (quoting *State v. Pietrzak*, 110 Wn. App. 670, 680, 41 P.3d 1240 (2002)).

Here, the State presented evidence, independent of Cardenas-Flores's statements to police, that CA suffered a displaced femur fracture injury while under Cardenas-Flores's care.[8] Because CA was less than a month old at the time he suffered the femur fracture, a fact finder could reasonably infer that CA was nonambulatory at the time of his injury and, thus, could further infer that CA did not cause his own injury. The State also presented testimony from Lang that established CA's femur fracture would require "a great amount of force" that is more than what would occur "in normal everyday life." RP at 80. Lang's testimony further established that CA's displaced femur fracture was likely caused by a combination of compression plus torsion or a twist. Taken together and in a light most favorable to the State, this evidence supports a logical and reasonable inference that CA suffered an assault by Cardenas-Flores resulting in substantial bodily harm. Therefore, we hold that the State established a prima facie showing that the crime of second degree assault of a child had occurred, satisfying the corpus delicti rule. RCW 9A.36.130(1)(a); RCW 9A.36.021(1)(a).

---

[8] Cardenas-Flores's and Austin's testimony established that Cardenas-Flores had total control over CA during the entire charging period, including December 23, the date that Cardenas-Flores testified she had heard a cracking in CA's leg. Under *McPhee*, we may consider this testimony in determining whether sufficient independent evidence established the corpus delicti. 156 Wn. App. at 60-61.

Citing to *Dow*, 168 Wn.2d at 254, Cardenas-Flores asserts that the State was required to present independent evidence of every element of second degree assault of a child to satisfy the corpus delicti rule, including independent evidence that she acted with intent when assaulting CA. We disagree.

It has long been established that the corpus delicti rule does not require the State to present independent evidence of the mens rea element of a crime where the mens rea element merely establishes the degree of the crime. *See, e.g.*, *State v. C.M.C.*, 110 Wn. App. 285, 287, 40 P.3d 690 (2002) ("The corpus delicti of taking a motor vehicle without permission does not require evidence independently establishing the mens rea element of knowledge."); *State v. Mason*, 31 Wn. App. 41, 48, 639 P.2d 800 (1982) (The corpus delicti rule does not require independent evidence of "the mental element of the felony charged . . . when that element . . . provides merely the *degree* of the generic crime charged."). In asserting that this precedent is no longer good law, Cardenas-Flores appears to rely on language in *Dow* that states "the State must still prove every element of the crime charged by evidence independent of the defendant's statement." 168 Wn.2d at 254.

In *State v. Hummel*, 165 Wn. App. 749, 764-65, 266 P.3d 269 (2012), *review denied*, 176 Wn.2d 1023 (2013), Division One of this court rejected the argument that the above language in *Dow* imposed a burden on the State to prove a defendant's mental state by independent evidence to satisfy the corpus delicti rule. The *Hummel* court concluded that this language from *Dow* was "'wholly incidental'" to our Supreme Court's decision in that case and, thus, was nonbinding dicta. 165 Wn. App. at 765 (quoting *Burress v. Richens*, 3 Wn. App. 63, 66, 472 P.2d 396 (1970)). The court also noted that this language in *Dow*, if taken at face value, "directly

20

contradicts, without explicitly overruling or distinguishing, decades of Supreme Court and Court of Appeals decisions holding that proof of identity, while a necessary element to be proved at trial, need not be proved to establish the corpus delicti of the charged crime." *Hummel*, 165 Wn. App. at 765. Finally, the court noted that neither the defendant in that case nor the *Dow* court "cite to any case holding that every element of the charged crime need be proved to establish the corpus delicti." *Hummel*, 165 Wn. App. at 766. We adopt the reasoning in *Hummel* and reject Cardenas-Flores's argument that *Dow* requires the State to present sufficient independent evidence of the mens rea elements of second degree assault of a child in order to meet the requirements of the corpus delicti rule.

Because the State presented evidence independent of Cardenas-Flores's statements that was sufficient to make a prima facie showing that the crime of assault of a child had occurred, any objection to the admission of her statements on corpus delicti grounds would not have succeeded. Accordingly, Cardenas-Flores cannot demonstrate any prejudice resulting from her defense counsel's failure to object to the admission of her statements on corpus delicti grounds, and thus, her claim of ineffective assistance of counsel on this ground fails.

B.    *Prosecutorial Misconduct*

Next, Cardenas-Flores asserts that her defense counsel was ineffective for failing to object to the prosecutor's alleged misconduct during closing argument and for failing to request a limiting instruction in response to such misconduct. But, as we addressed above, the prosecutor's argument at closing did not constitute misconduct. Therefore, Cardenas-Flores cannot show that an objection by defense counsel would have been sustained or that she would

have been entitled to a curative instruction had defense counsel requested one. Accordingly, Cardenas-Flores's claim of ineffective assistance of counsel on this ground fails.

VI. LEGAL FINANCIAL OBLIGATIONS

Finally, Cardenas-Flores asserts that the sentencing court erred by imposing LFOs without first inquiring into her ability to pay the LFOs. Cardenas-Flores's judgment and sentence contains a preprinted finding that she "is presently indigent but is anticipated to be able to pay financial obligations in the future." CP at 30. Cardenas-Flores did not challenge this finding at her August 27, 2014 sentencing hearing, which hearing occurred after our decision in *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492 (2013), and before our Supreme Court's remand of that decision in *State v. Blazina*, 182 Wn.2d 827, 834-35, 344 P.3d 680 (2015) (affirming Court of Appeals' exercise of discretion to refuse to address LFO issue raised for the first time on appeal, but exercising its own discretion to reach the issue and remand to trial court for further proceedings).

Although Cardenas-Flores did not raise the issue of her inability to pay LFOs at sentencing, we elect to exercise our discretion to address the issue for the first time on appeal in light of Cardenas-Flores's indigent status, the amount of imposed LFOs, and statements at sentencing that she would likely face deportation as a result of her conviction. Under *Blazina*, the sentencing court erred by imposing LFOs without first inquiring into Cardenas-Flores's current or likely future ability to pay those LFOs. 182 Wn.2d at 838. Accordingly, we remand for resentencing solely on the LFO issue, at which the sentencing court must make an adequate inquiry of Cardenas-Flores's ability to pay discretionary LFOs before imposing such LFOs.

## VII. APPELLATE COSTS

On March 4, 2016, Cardenas-Flores filed a supplemental brief opposing appellate costs in light of *State v. Sinclair*, 192 Wn. App. 380, 367 P.3d 612 (2016), arguing that she does not have the ability to pay. In light of Cardenas-Flores's indigent status, and our presumption under RAP 15.2(f) that she remains indigent "throughout the review" unless the trial court finds that her financial condition has improved, we exercise our discretion to waive appellate costs. RCW 10.73.160(1).

We affirm Cardenas-Flores's conviction but remand for resentencing consistent with this opinion.

Worswick, J.

Johanson, J.

MAXA, J. (concurring) – I concur in the result of this case. I write separately because I disagree with the lead opinion's conclusion that the corpus delicti issue involves only a rule of evidence that cannot be raised for the first time on appeal. I believe that whether the State has established the corpus delicti of a crime through evidence independent of a defendant's statements involves sufficiency of the evidence necessary to convict that can be raised for the first time on appeal under RAP 2.5(a)(2).

In order to convict a defendant of a crime, the State has the burden of proving the "corpus delicti" of that crime – i.e., that some crime actually occurred. *State v. Green*, 182 Wn. App. 133, 142, 328 P.3d 988, *review denied*, 181 Wn.2d 1019 (2014). Under the corpus delicti rule, the "defendant's incriminating statement alone is not sufficient to establish that a crime took place." *State v. Brockob*, 159 Wn.2d 311, 328, 150 P.3d 59 (2006) (footnote omitted). "[T]he State must present evidence independent of the incriminating statement that the crime a defendant described in the statement actually occurred." *Id*. (emphasis omitted).

The lead opinion states that the corpus delicti rule is merely a rule of evidence. This notion is inconsistent with the Supreme Court's decision in *State v. Dow*, 168 Wn.2d 243, 227 P.3d 1278 (2010). In *Dow*, the court emphasized that "the corpus delicti rule is both a rule of admissibility and a rule of sufficiency." *Id*. at 251. The court stated:

> The corpus delicti doctrine generally is a principle that tests the sufficiency or adequacy of evidence, other than a defendant's confession, to corroborate the confession. . . . *Where no other evidence exists to support the confession, a conviction cannot be supported solely by a confession.*

*Id*. at 249 (emphasis added). In other words, "the corpus delicti rule prevents a defendant from being convicted based on his or her confession alone." *Id*. at 250-51.

The court in *Dow* addressed RCW 10.58.035, which permits the admission of a defendant's statements even where independent proof of corpus delicti is absent when there is substantial independent evidence that the statement is trustworthy. *Id*. at 251-254. However, the court expressly distinguished between the *admissibility* of a defendant's statement and the *sufficiency of evidence* to convict a defendant of a crime. *Id*. at 253-54.

> Considering RCW 10.58.035's plain language, we hold that any departure from the traditional corpus delicti rule under RCW 10.58.035 pertains only to admissibility and not to the sufficiency of evidence required to support a conviction. The corpus delicti doctrine still exists to review other evidence for sufficiency, i.e., corroboration of a confession.

*Id*.

The court concluded that whether Dow's statement was trustworthy under RCW 10.58.035(2) was immaterial to whether there was sufficient evidence independent of the defendant's confession to convict Dow of the charged crime. *Id*. at 254

> [E]ven if the statements are admissible, no other evidence exists to establish the corpus delicti independent of Dow's statement. Further, *our corpus delicti cases have always required sufficient evidence independent of a defendant's confession to support a conviction.* RCW 10.58.035 does nothing to change this requirement.

*Id*. (emphasis added).

Division Three of this court also has concluded that the corpus delicti rule is a rule of sufficiency of evidence as well as a rule of admissibility of evidence. *State v. Grogan*, 158 Wn. App. 272, 275-76, 246 P.3d 196 (2010).

> The corpus delicti rule does not merely set a standard for the admission of statements into evidence; *it establishes that an uncorroborated confession is insufficient evidence to sustain a conviction as a matter of law* unless independent proof shows that a crime occurred.

*Id*. at 275 (emphasis added).

The corpus delicti rule provides that a defendant's statements, standing alone, are insufficient to support a conviction unless there is corroborating evidence independent of the statement that a crime actually occurred. *Brockob*, 159 Wn.2d at 328. Because the corpus delicti rule involves sufficiency of evidence to convict, I would hold that the corpus delicti issue can be raised for the first time on appeal under RAP 2.5(a)(2).

The lead opinion suggests that requiring a defendant to raise the corpus delicti issue at trial in order to preserve the issue for appeal is appropriate because otherwise the defendant could remain silent and not inform the State that it had not produced sufficient evidence of corpus delicti. However, in other contexts a defendant certainly has no obligation to inform the State that it has not produced sufficient evidence to sustain a conviction. There is no reason to impose such a requirement when the insufficiency of evidence involves corpus delicti.

Here, I agree with the lead opinion – as discussed in its analysis of Cardenas-Flores's ineffective assistance of counsel claim – that there is sufficient corroborating evidence independent of Cardenas-Flores's statements to establish the corpus delicti of the crime. This means that even if the lead opinion did address the corpus delicti issue on its merits, it would have rejected Cardenas-Flores's arguments. Therefore, I concur in the result even though I disagree with the lead opinion's approach.

_____
MAXA, A.C.J.

26