# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>BUDDY L. BOYER,<br><br>Appellant. | No.  48763-2-II<br>(Consolidated w/ No. 48766-7-II)<br><br><br>PUBLISHED OPINION |

BJORGEN, C.J. — Buddy L. Boyer appeals the juvenile court's adjudication of guilt in his trial for second degree reckless burning, as well as his manifest injustice disposition at sentencing.  He argues that (1) the juvenile court's finding of fact 5, concerning his actions just before the fire, is unsupported by substantial evidence, (2) he received ineffective assistance of counsel when his counsel failed to make a motion to dismiss at the close of the State's case because the State failed to provide independent evidence of the corpus delicti for second degree reckless burning, and (3) if the State prevails on appeal, we should decline to impose appellate costs.  In his statement of additional grounds (SAG), he contends that the juvenile court improperly imposed a manifest injustice disposition on account of his risk of re-offending, resulting in an impermissibly long sentence.

We conclude that substantial evidence supports finding of fact 5, we hold that Boyer did not receive ineffective assistance of counsel, and we decline to impose appellate costs on him. Furthermore, because the issue related to his manifest injustice disposition has already been decided by our court commissioner and we denied Boyer's motion to modify the commissioner's ruling, we decline to reach this issue.  Accordingly, we affirm the juvenile court.

FACTS

On July 5, 2015, Donald Hanson Jr. pulled into the Valley Cleaners' parking lot and noticed Boyer sitting in the adjacent alley.[1]  Hanson and Boyer acknowledged each other as Hanson went inside Valley Cleaners.  Hanson saw Boyer handling something in his hand and doing something next to himself, but could not determine what he had or was doing.  About two minutes later, someone came inside Valley Cleaners and said that there was a fire outside. Several people, including Hanson, began attempting to put it out.  Hanson noticed that the fire was exactly where Boyer had been sitting.

Within one or two minutes, Officer Jason Capps arrived at Valley Cleaners and witnesses stated that a potential suspect had recently left the alley.  Officer Capps began searching the area and encountered Boyer, who matched the witnesses' description of the suspect, about two blocks away from Valley Cleaners.  Another officer brought Hanson to Officer Capps, and Hanson identified Boyer as the person whom he saw in the alley.  Officer Capps asked Boyer "if he only meant to start a small fire," and he told Officer Capps that "he didn't mean to start the fire and that it just got out of control."  Verbatim Report of Proceedings (VRP) (Feb. 4, 2016) at 9.  The State charged Boyer with second degree reckless burning.

On January 5, 2016, Boyer was seen carrying a 10-inch knife while at high school.  He was arrested and charged with possession of a firearm or other dangerous weapon on school

---

[1] Our statement of facts incorporates the trial court's findings, which are either unchallenged on appeal or supported by substantial evidence, as explained further below.

facilities.  On January 21, 2016, Boyer pled guilty to that charge.  The juvenile court deferred a

disposition hearing on that conviction until after his trial for second degree reckless burning.

At trial on the second degree reckless burning charge, the State called Officer Capps and

Hanson as witnesses.  On cross examination, defense counsel questioned Hanson about his

observations of Boyer as Hanson was entering Valley Cleaners:

| [Defense Counsel]: | So you identified Mr. Boyer as being the person you saw there, but you didn't identify him as being the person who started the fire? |
|---|---|
| [Hanson]: | I can't say he was starting the fire - that he physically started it, because it wasn't burning when I first pulled in and went to the laundry mat [sic]. |
| [Defense Counsel]: | When you - when you pulled up to the laundry mat [sic] and you had a brief conversation with Mr. Boyer, did you see any lighter or anything else in his hand? |
| [Hanson]: | No. When I first pulled in he had - he was doing something like this and looked up at me and then went like that and, you know, nodded and [sic] kind of went like that back at him. |
| [Defense Counsel]: | But you don't know what it was? |
| [Hanson]: | No, no. |

VRP (Feb. 4, 2016) at 20-21.

As brought out in the following exchange, Boyer took the position that his admission to

Officer Capps was false and that his friend Ryan Erickson had started the fire in the two minutes

between Hanson entering Valley Cleaners and the detection of the fire.

| [Boyer]: | After Mr. Hanson arrived, my friend took off and he came back and he lit the fire and then he took off again. |
| [Defense Counsel]: | Who was that? |
| [Boyer]: | Ryan Erickson. |
| [Defense Counsel]: | Okay. So Mr. Erickson started the fire? |
| [Boyer]: | Yes, he did, sir. |

VRP (Feb. 4, 2016) at 22-23.

The juvenile court adjudicated Boyer guilty of second degree reckless burning and entered findings of fact and conclusions of law, including finding of fact 5, which states, "[Boyer] had something in his hand and was doing something beside him, but Mr. Hanson could not see what." Clerk's Papers (CP) (4-3) at 19-21.

On February 18, 2016, the juvenile court held a disposition hearing on the dangerous weapon and second degree reckless burning charges. The court determined that a local sanction would be a manifest injustice and imposed a sentence of 52 weeks for each adjudication of guilt to run consecutively, for a total of 104 weeks. Boyer appealed both the adjudication of guilt on the second degree reckless burning charge and the manifest injustice disposition.

On July 1, 2016, a commissioner from our court granted Boyer's motion to bifurcate his appeal to address the adjudication of guilt of second degree reckless burning and the manifest injustice disposition separately. On September 16, our court commissioner issued a ruling affirming the juvenile court's manifest injustice disposition. Boyer filed a motion to modify the commissioner's ruling, and we denied the motion on October 31, 2016.

4

We now turn to the appeal of the adjudication of guilt on the second degree reckless

burning charge and of the manifest injustice disposition.

ANALYSIS

I. SUBSTANTIAL EVIDENCE

Boyer argues that the juvenile court's finding 5 is unsupported by substantial evidence.

We disagree.

We review findings of fact to determine whether they are supported by substantial

evidence and, in turn, whether the findings support the conclusions of law and judgment. *State v.*

*Macon*, 128 Wn.2d 784, 799, 911 P.2d 1004 (1996). Substantial evidence is evidence sufficient

to persuade a fair minded, rational individual that the finding is true. *State v. Levy*, 156 Wn.2d

709, 733, 132 P.3d 1076 (2006). We do not weigh the evidence or witness credibility. *Quinn v.*

*Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009).

Finding 5 states, "[Boyer] had something in his hand and was doing something beside

him, but Mr. Hanson could not see what." CP (4-3) at 20. Boyer contends that this finding is not

supported by substantial evidence because "Mr. Hanson was clear that the defendant did not

have [sic] lighter or any other object in his hands." Br. of Appellant at 9.

At trial, Hanson testified that "he was doing something *like this* and looked up at me."

VRP (Feb. 4, 2016) at 21 (emphasis added). Although the record does not indicate what "like

this" means, Hanson's testimony suggests that he was physically replicating Boyer's hand

motions in response to defense counsel's question whether Hanson saw "any lighter or anything

else in [Boyer's] hand." VRP (Feb. 4, 2016) at 21. Defense counsel's following question, "[b]ut

you don't know what it was?" also suggests that Hanson observed him holding something, but could not identify what it was. VRP (Feb. 4, 2016) at 21. Although Hanson responded that he did not know what Boyer was holding, the testimony just noted and the context of the questioning demonstrate that finding 5 is supported by substantial evidence.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL – CORPUS DELICTI

A.    The Doctrine of Corpus Delicti

Boyer argues that he received ineffective assistance of counsel because his attorney failed to make a motion to dismiss under the corpus delicti rule. He contends that there was insufficient independent evidence of the corpus delicti for second degree reckless burning, and consequently his confession to Officer Capps that "he didn't mean to start the fire and that it just got out of control," should not have been admitted. VRP (Feb. 4, 2016) at 9. We disagree with all his contentions.

To establish ineffective assistance of counsel, a defendant must demonstrate that: (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness under the circumstances and (2) he was prejudiced as a result of his counsel's performance. *State v. Larios-Lopez*, 156 Wn. App. 257, 262, 233 P.3d 899 (2010). A legitimate trial strategy or tactic cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Estes*, 193 Wn. App. 479, 488, 372 P.3d 163 (2016), *aff'd*, 395 P.3d 1045 (2017). A defendant is prejudiced by counsel's deficient performance if, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). We presume that defense counsel's representation

was effective, and the defendant must demonstrate that there was no legitimate or strategic reason for defense counsel's conduct. *McFarland*, 127 Wn.2d at 335. When one claims that his counsel was ineffective for failing to make a motion, he must also show that the motion likely would have been granted in order to establish prejudice. *In re Davis*, 152 Wn.2d 647, 711, 101 P.3d 1 (2004).

Under the corpus delicti rule, the confession or admission of a person charged with a crime is not sufficient, standing alone, to prove guilt. *State v. Aten*, 130 Wn.2d 640, 655-56, 927 P.2d 210 (1996). Instead, the confession or admission must be corroborated by independent evidence of the corpus delicti or "'body of the crime.'" *Id.* (quoting JOHN W. STRONG, 1 MCCORMICK ON EVIDENCE § 145 at 227 (4th ed. 1992))

In general, the "[c]orpus delicti usually consists of two elements: (1) an injury or loss (*e.g.*, death or missing property) and (2) someone's criminal act as the cause thereof." *City of Bremerton v. Corbett*, 106 Wn.2d 569, 573-74, 723 P.2d 1135 (1986). Typically, "[p]roof of the identity of the person who committed the crime is not part of the corpus delicti, which only requires proof that a crime was committed by someone." *Id.* at 574. Furthermore, "[i]t has long been established that the corpus delicti rule does not require the State to present independent evidence of the mens rea element of a crime where the mens rea element merely establishes the degree of the crime." *State v. Cardenas-Flores*, 194 Wn. App. 496, 519, 374 P.3d 1217, *review granted*, 186 Wn.2d 1017 (2016).

The independent evidence may be either direct or circumstantial and need not be of such character as would establish the corpus delicti beyond a reasonable doubt or even by a

preponderance of the evidence. *State v. Hummel*, 165 Wn. App. 749, 758-59, 266 P.3d 269 (2012). Rather, the independent evidence "is sufficient if it prima facie establishes the corpus delicti." *Id.* at 759. "Prima facie" means "evidence of circumstances which would support a logical and reasonable inference of the facts sought to be proved." *Id*. (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 656). In reviewing whether there is sufficient evidence to support proof of the corpus delicti of a crime, we assume the truth of the State's evidence and all reasonable inferences are construed in favor of the State. *Id*.

Boyer was charged with second degree reckless burning, which occurs if a person:

> [K]nowingly causes a fire or explosion, whether on his or her own property or that of another, and thereby recklessly places a building or other structure, or any vehicle, railway car, aircraft, or watercraft, or any hay, grain, crop or timber, whether cut or standing, in danger of destruction or damage.

RCW 9A.48.050.

We are aware of no Washington case establishing the corpus delicti of second degree reckless burning. However, in *State v. Angulo*, Division Three of our court held that

> [t]he traditional requirement of a 'criminal act' [for establishing corpus delicti] was replaced, unnecessarily in our view, by a requirement that a specific element . . . be established. That is not the way the [corpus delicti rule] is applied in other types of cases [than child rape]. As noted previously, the requirements in a homicide case are the fact of death and a criminal agency as the cause of death. . . . There is no requirement that the appropriate mental state (intent, recklessness, negligence), premeditation (in a first degree murder charge), or identity of the killer . . . be established in order to admit an incriminating statement.

148 Wn. App. 642, 656, 200 P.3d 752 (2009) (internal citation omitted).

Consistently with *Angulo*, we held in *State v. Picard*, 90 Wn. App. 890, 901, 954 P.2d 336 (1998), that the corpus delicti for first degree arson is shown by evidence "(1) that the

8

building in question burned; and (2) that it burned as a result of the willful and criminal act of some person."[2]  This approach goes as far back as *State v. Pienick*, 46 Wash. 522, 525, 90 P. 645 (1907), which described the corpus delicti of arson in the following terms:

> Proof of the single fact that a building has been burned does not show the corpus delicti of arson, but it must also appear that [the building] was  burned by the willful act of some person criminally responsible, and not as the result of natural or accidental causes. Where a building is burned, the presumption is that the fire was caused by accident or natural causes rather than by the deliberate act of the accused.

We note also that the State is required to present evidence that the fire or explosion was the result of the actions of someone criminally responsible because "[corpus delicti] is *not* established when independent evidence supports reasonable and logical inferences of both criminal agency and noncriminal cause."  *Aten*, 130 Wn.2d at 660.  Although mens rea is an essential element of the offense, "it is separate and distinct from the initial question of whether the body of the crime has been established."  *State v. C.M.C.*, 110 Wn. App. 285, 289, 40 P.3d 690 (2002).  Such a formulation is also consistent with the general rule articulated in *Corbett*, that "[c]orpus delicti usually consists of two elements: (1) an injury or loss (*e.g.*, death or missing property) and (2) someone's criminal act as the cause thereof."  106 Wn.2d at 573-74.

---

[2] Under RCW 9A.48.020:
> (1) A person is guilty of arson in the first degree if he or she knowingly and maliciously: (a) Causes a fire or explosion which is manifestly dangerous to any human life, including firefighters; or
> (b) Causes a fire or explosion which damages a dwelling; or
> (c) Causes a fire or explosion in any building in which there shall be at the time a human being who is not a participant in the crime; or
> (d) Causes a fire or explosion on property valued at ten thousand dollars or more with intent to collect insurance proceeds.

In light of the statute and case law just discussed, we hold that the corpus delicti for second degree reckless burning is satisfied by independent proof of two elements. The first element, following RCW 9A.48.050, is the occurrence of a fire or explosion that placed property in danger of destruction. The second element, following *Angulo*, *Picard*, *Pienek*, and *Aten* is proof that the fire or explosion occurred as a result of the actions of someone criminally responsible.

B.      Application Of the Standards

As set out above, to establish ineffective assistance of counsel one must show both that his counsel's performance was deficient and that he was prejudiced by that deficiency. Even if we assume, without deciding, that trial counsel was deficient in failing to make a motion to dismiss for lack of independent evidence of corpus delicti, Boyer fails to show that any such motion would have been granted, and therefore, he cannot show he was prejudiced. Thus, he did not receive ineffective assistance of counsel.

Under *McFarland*, 127 Wn.2d at 334-35, one would be prejudiced by the absence of a motion to dismiss if there was a reasonable probability that the result of the proceeding would have been different had the motion been made. As held above, in order to establish the corpus delicti for second degree reckless burning, the State was required to show (1) a fire or explosion that placed property in danger of destruction and (2) that the fire or explosion occurred as a result of the actions of someone criminally responsible. Although Boyer concedes that a fire did take place, he argues that the State did not present sufficient independent evidence that the fire was started by someone criminally responsible. We disagree.

10

The testimony of Hansen and Officer Capps, described above, constitutes independent evidence that supplies prima facie proof of the element of corpus delicti that Boyer claims is absent. In sum, that testimony established that Hanson noticed Boyer sitting in the alley adjacent to Valley Cleaners; Hanson observed him handling something in his hand and doing something next to himself; about two minutes later, someone came inside Valley Cleaners and said that there was a fire outside; several people, including Hanson, began attempting to put it out; and Hanson noticed that the fire was exactly where the appellant had been sitting, Officer Capps took a description of the suspect and found Boyer about two blocks away, matching that description, and Hanson identified him as the person whom he saw in the alley.

This testimony is independent evidence providing prima facie proof of the claimed missing aspect of the corpus delicti: that someone criminally responsible started the fire. As such, Boyer has not established that the juvenile court would have likely granted the motion to dismiss for lack of corpus delicti and cannot demonstrate prejudice with respect to his ineffective assistance of counsel claim.

### III. APPELLATE COSTS

On the issue of appellate costs, the State has disclaimed any intent to seek costs for this appeal, stating, "The State is not asking for, nor will it ask for, [a]ppellate costs." Br. of Resp't at 8. Therefore, we decline to impose costs on appeal.

### IV. SAG

The SAG contends that the juvenile court improperly considered the risk of reoffending in supporting a manifest injustice disposition and that consequently the sentence was excessive.

11

However, both of these issues were argued before our court commissioner, who affirmed the manifest injustice disposition on September 16, 2016.  On September 19, Boyer filed a motion to modify the commissioner's ruling.   On October 31, 2016, we denied that motion.  Therefore, because these issues have already been addressed by our commissioner, and we declined to modify the commissioner's ruling, we decline to reach these issues again.

CONCLUSION

We affirm the juvenile court.

BJORGEN, C.J.

We concur:

LEE, J.

MELNICK, J.