IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the matter of the Personal Restraint of | ) | No. 40846-9-III |
| | ) | |
| WILLIAM P. MCBRIDE, | ) | |
| | ) | |
| Petitioner. | ) | UNPUBLISHED OPINION |

HILL, J. — William McBride brings this personal restraint petition to challenge his conviction for possession of a controlled substance with intent to deliver. He essentially makes three claims. First, he claims the State violated his constitutional rights to present a defense and to a fair trial by withholding bodycam footage. Second, he claims his attorney's performance fell below a reasonable standard, violating his right to the effective assistance of counsel. Third, he claims insufficient evidence supports his conviction. We find no error and deny the petition.

FACTS

Whitman County Sherriff's Sergeant Michael Jordan created a Facebook profile using the alias "Pauline Niner" to connect with people online who were willing to sell

drugs. Rep. of Proc. (RP) at 99-100. In January 2022, William McBride contacted "Pauline" through Facebook messenger. When "Pauline" indicated she was interested in methamphetamine ("white christmas" or "Clr"), McBride offered to meet up and sell her some. He also alluded to being able to supply her with more drugs going forward.

After some unexpected delays, the two agreed to meet. McBride assured "Pauline" he would bring methamphetamine and "Pauline" confirmed she had the money to buy it. RP at 107-08; Ex. 4, page 3. "Pauline" gave McBride an address at which they were to meet, along with instructions on where to park. McBride drove his suburban to the meetup location where Whitman County Sherriff's Deputy Tyler Langerveld pulled him over. Deputy Langerveld initially told McBride he had a taillight out before instructing him to exit his vehicle, whereupon Deputy Langerveld handed McBride over to Sergeant Jordan who was waiting nearby. Sergeant Jordan revealed himself as "Pauline" and placed McBride under arrest. PRP Ex. 4, page 3; RP at 111-12. In a search of McBride incident to arrest, Sergeant Jordan located .40 grams of methamphetamine and a broken meth pipe. McBride told Sergeant Jordan he brought the drugs to smoke *with* "Pauline," not to sell them to her.

After McBride's arrest, Amy Baird, his girlfriend, picked up the suburban. Moments after doing so, Sergeant Jordan pulled Baird over and the following conversation took place:

> MJ [Sergeant Michael Jordan]: Hello.
>
> AB [Amy Baird]: Hi. Gotta open the door.
>
> MJ: This stop is being recorded. Can I see your license, registration, and insurance?
>
> AB: I don't if he has registrate[sic]—or insurance. I know that he just called me from the jail and asked me to pick it up.
>
> MJ: Okay. Reason I'm stopping you is you have a brake light out.
>
> AB: Are you serious?
>
> MJ: Yeah.
>
> AB: Leave to him not to tell me that. Hey, can you find out what his charges are for me, and tell me what—
>
> MJ: Bill?
>
> AB: Yeah, Bill.
>
> MJ: Yeah, he's—he's under arrest for possession with intent to deliver methamphetamine.
>
> AB: Oh. Do you know who he was with, or?
>
> MJ: Yeah. I posed as a female on Facebook that he wanted to come down and have sex with, and give methamphetamine to.
>
> AB: Deserves him right then.
>
> MJ: Yeah. Pretty much. Hang tight for me. I'll be right back. Amy, you got a license.
>
> AB: Yeah.
>
> MJ: When did that happen?
>
> AB: It's been—right before I went to Oregon.
>
> MJ: Oh, okay. So I guess I should rephrase. Bill didn't actually agree to have sex with me. He just wanted to meet me, and you know, hang out.
>
> AB: Oh, sure. If he thought you were a female, he wanted to have sex.

MJ: Yeah. So I shouldn't infer that that's what he wanted, because I don't wanna [sic] be untruthful. But he wanted to meet me and hang out, so. And sell me methamphetamine, so.

AB: What a fucking punk.

MJ: Yeah.

AB: Yeah I just—his niece sold him this, and she didn't want it impounded or anything, so.

MJ: She sold it to him?

AB: Yeah. Or gave it to him. I'm not sure how that whole thing went about.

MJ: Uh-huh.

AB: Because I was in Oregon, so.

MJ: Okay. Well, yeah it is what it is, so. Have a good night and we'll—I'm glad he got it out of here. So I'm sure the people in the apartment didn't want it around. So thanks for getting rid of it.

AB: Yeah.

PRP Ex. 8, at pages 3-5.

This conversation was captured on Sergeant Jordan's body camera. The Whitman County Sheriff's retained this video but did not provide it to the State . . . Accordingly, the State never provided it to defense counsel . . .The video was discovered after trial as part of a public records request.

The State charged McBride by amended information with one count of possession with intent to deliver methamphetamine . . .At a CR 3.5 hearing, the State played Deputy Langerveld's and Sergeant Jordan's body camera videos showing their interactions with McBride at the time of the arrest . . .Defense counsel did not object to the State introducing McBride's statements from those videos.

Trial took place a few days later. In addition to Sergeant Jordan's testimony, the State admitted the Facebook messages and the body camera footage from McBride's arrest. A jury found McBride guilty, and the court sentenced him to 90 months of confinement.

McBride appealed, primarily arguing he should have been acquitted on the basis of his entrapment defense. This court affirmed the trial court in a 2023 unpublished opinion. *See State v. McBride*, No. 38872-7-III (Wash. Ct. App. Aug. 17, 2023). McBride now timely brings this personal restraint petition.

LAW AND ANALYSIS

McBride alleges his case was riddled with constitutional violations associated with his right to present a defense, right to a fair trial, and right to the effective assistance of counsel. McBride argues his right to present a defense and to a fair trial were violated when the State withheld Baird's body camera footage because it prejudiced his ability to challenge his traffic stop and argue his entrapment defense. He argues he was deprived of the effective assistance of counsel because his attorney (a) failed to make a pretext challenge to the traffic stop, (b) failed to raise a corpus delicti challenge to the admissibility of McBride's statements (c) failed to investigate or adequately prepare for trial, (d) argued an unsupportable "sharing" theory to the jury, and finally (e) failed to

5

prepare for sentencing, advocate for an exceptional sentence, or request a Drug Offender Sentencing Alternative (DOSA).

*Baird Body Camera Footage*

McBride argues the State violated his constitutional rights to present a defense and to a fair trial by withholding the bodycam footage from Baird's traffic stop. He maintains the State's failure to disclose the footage amounted to a *Brady* violation because the evidence was favorable and he was prejudiced by not receiving it.

When the State fails to provide the defense with evidence favorable to the accused, it violates due process if the evidence is material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963). This is known as a "*Brady* violation." A *Brady* violation occurs if (1) the evidence at issue is favorable to the defendant, either as impeachment or exculpatory evidence, (2) the State intentionally or inadvertently suppressed the evidence, and (3) the suppression of the evidence prejudiced the defendant. *State v. Mullen*, 171 Wn.2d 881, 895, 259 P.3d 158 (2011); *State v. Davila*, 184 Wn.2d 55, 69, 357 P.3d 636 (2015).

McBride argues the Baird video is favorable to his case for two reasons. First, because it demonstrates the officers employed the same grounds to stop both McBride and Baird, thereby showing both traffic stops were pretextual, and therefore providing an

evidentiary basis for a suppression motion. Second, because Sergeant Jordan's conversation with Baird provides further evidence supporting his entrapment defense. We disagree.

Initially, we would note the video footage of Baird being pulled over by Sergeant Jordan is not exculpatory, as it has no bearing on McBride's guilt or punishment for possession with intent to deliver methamphetamine. In the recording, Baird does not indicate whether McBride recently used or possessed methamphetamine or that she even knew McBride traveled to Pullman to sell methamphetamine to "Pauline." The video is also not impeachment evidence, as Sergeant Jordan testified at trial regarding the purpose for setting up the fake Facebook profile. In short, Baird's video offers nothing new.

Even if the bodycam footage of Baird's traffic stop was somehow favorable to McBride, he would also have to establish that he was prejudiced by the State's withholding of it. To accomplish this, he must show "'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433-34, 115 S. Ct. 1555 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 668, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)). As discussed below, although McBride alleges the video could have assisted him in making a suppression motion, or with his entrapment defense, he fails to meet his

burden of showing that access to the video would have changed the result of the proceedings.

*Suppression Motion Based on Pretextual Stop*

McBride argues he was prejudiced by the State's withholding of the Baird video because it provided additional evidence that the officers stopped him without a valid basis. We consider this argument under the well-established law of a *Terry* stop. A *Terry* stop is an investigatory stop that is "based on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *State v. Diluzio*, 162 Wn. App. 585, 590, 254 P.3d 218 (2011) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)) (alteration in original). "A *Terry* stop requires a well-founded suspicion that the defendant engaged in criminal conduct." *State v. Doughty*, 170 Wn.2d 57, 62, 239 P.3d 573 (2010). This standard is satisfied if there is a "substantial possibility that criminal conduct has occurred or is about to occur." *State v. Lee*, 147 Wn. App. 912, 916, 199 P.3d 445 (2008) (quoting *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986)). We apply the totality of the circumstances test to determine whether a police officer has a reasonable suspicion to justify a *Terry* stop. *State v. Lee*, 147 Wn. App. at 916 .

A *Terry* stop may be pretextual when police officers use the traffic code as an excuse to investigate criminal activity for which they do not have a reasonable articulable suspicion. *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999); *State v. Myers*, 117 Wn. App. 93, 96, 69 P.3d 367 (2003). A mixed-motive traffic stop occurs when an officer legitimately intends to enforce the traffic code, but also wants to investigate criminal activity for which the officer does not have a reasonable basis to conduct a stop. *State v. Arreola*, 176 Wn.2d 284, 297-98, 290 P.3d 983 (2012). So long as an officer has a reasonable articulable suspicion that a traffic infraction occurred, and this is "an actual, conscious, and independent cause of the traffic stop," a mixed-motive stop will be upheld despite the lack of a basis to stop the vehicle due to suspicions of criminal activity. *State v. Arreola*, 176 Wn.2d at 297-98 . To analyze whether a pretextual or a mixed-motive stop occurred, this court looks to the totality of the circumstances, including the officer's subjective intent and the objective reasonableness of their behavior. *State v. Weber*, 159 Wn. App. 779, 788, 247 P.3d 782 (2011).

In the present case, if we assume the officers' real reason for stopping McBride's vehicle was to investigate the drug crime, not because of a broken taillight, the officers nevertheless had the authority to stop McBride for either reason.[1] McBride's Facebook

---

[1] Even if the taillights were properly functioning, it would be immaterial since the

9

messages and his act of driving to the designated meetup location provided the officers with a substantial possibility that criminal conduct was about to occur. Deputy Langerveld was justified in conducting a *Terry* stop for this reason. *See Terry v. Ohio*, 392 U.S. at 21. Baird's video in no way alters this analysis, and McBride's potential suppression motion was not prejudiced by its absence.

*Entrapment*

McBride also argues the State's failure to disclose the Baird video prejudiced his ability to argue entrapment as a defense at trial. McBride acknowledges that Sergeant Jordan testified to using a female persona on Facebook when looking to catch criminals because he perceived men to be more interested in communicating with a woman. However, McBride argues the footage itself depicted a more detailed explanation as to how Sergeant Jordan tricked him into believing he was a woman who may have sex with him if he could bring her drugs.

We addressed McBride's entrapment defense in his direct appeal but did not consider whether the Baird video would impact that defense. *State v. McBride*, No. 38872-7-III (Wash. Ct. App. Aug. 17, 2023). To succeed on the defense of entrapment, McBride must show (a) the criminal design originated in the mind of law enforcement,

criminal investigation was the true reason for the stop.

and (b) he was lured or induced to commit a crime that he had not otherwise intended to commit. RCW 9A.16.070. Further, he would have to do more than show that law enforcement merely afforded him an opportunity to commit a crime. RCW 9A.16.070. We noted in McBride's direct appeal that "[i]n any case involving a law enforcement sting operation, the evidence may well support a finding that the criminal design originated in the mind of law enforcement officials. As in this case, the outcome is more likely to turn on whether the defendant proves that he was 'lured' or 'induced' to commit a crime or whether law enforcement did no more than afford the defendant an opportunity to commit a crime." *Id.* at page 17.

The entirety of the evidence on whether McBride was lured or induced to sell "Pauline" methamphetamine comes from the Facebook messages, not what Sergeant Jordan may have thought. We have already concluded the Facebook messages provided the jury with a sufficient basis to conclude McBride was not tricked into committing a crime he would not have otherwise committed. Baird's video does not alter this conclusion in any way.

*Ineffective Assistance of Counsel*

McBride lists five reasons as to why he believes defense counsel violated his right to the effective assistance of counsel. First, by failing to make a pretext challenge to the

traffic stop. Second, by failing to raise a corpus delicti challenge to the admissibility of McBride's statements. Third, by failing to investigate or adequately preparing for trial. Fourth, by arguing a "sharing" theory to the jury. Fifth, and finally, by failing to prepare for sentencing, advocate for an exceptional sentence, or request a DOSA.

The Sixth Amendment to the United States Constitution and article I, section 22 of this State's constitution guarantee criminal defendants the right to the effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 684-85, 104 S. Ct. 2052, , 80 L. Ed. 2d 674 (1984); *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 672, 101 P.3d 1 (2004). This right extends to sentencing. *State v. Roach*, 18 Wn. App. 2d 98, 113, 489 P.3d 283 (2021). A violation of the right to the effective assistance of counsel is established upon a showing that (1) defense counsel performed deficiently and (2) the defendant was prejudiced by this deficient performance. *State v. Johnson*, 12 Wn. App. 2d 201, 210, 460 P.3d 1091 (2020), *aff'd*, 197 Wn.2d 740, 487 P.3d 893 (2021). Counsel performs deficiently if their performance "fell below an objective standard of reasonableness based on consideration of all the circumstances." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995), *as amended* (Sept. 13, 1995). There is a strong presumption that counsel performs effectively, but there is a sufficient basis to rebut such a presumption if

there is no conceivable legitimate tactic to explain counsel's performance.  *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

As to the prejudice prong, a defendant is prejudiced by counsel's deficient performance if "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different."  *State v. McFarland*, 127 Wn.2d  334-35, *as amended* (Sept. 13, 1995).  The showing of both deficient performance and prejudice is required on direct review and in a personal restraint petition.  *In re Pers. Restraint  of Quintero*, 29 Wn. App. 2d 254, 541 P.3d 1007, *review denied*, 3 Wn.3d 1018, 554 P.3d 1234 (2024).

*Initial Police Stop*

McBride argues his defense counsel provided ineffective assistance by failing to file a CrR 3.6 suppression motion challenging Deputy Langerveld's traffic stop.  As we have already ruled the traffic stop was lawful, we need not address this argument further. *See State v. D.E.D.*, 200 Wn. App. 484, 490, 402 P.3d 851 (2017) ("[I]n the context of the failure to bring a motion to suppress, counsel can only have been ineffective if it can be shown that the motion likely would have been granted.")

*Corpus delicti*

McBride argues defense counsel's failure to raise a corpus delicti challenge to the admissibility of his Facebook messages and the statements he made to law enforcement during the time of his arrest violated his right to the effective assistance of counsel.

To prove corpus delicti, there must be evidence sufficient to support an inference that a criminal act has taken place. *State v. Brockob*, 159 Wn.2d 311, 327, 150 P.3d 59 (2006), *as amended* (Jan. 26, 2007). An incriminating statement of the defendant's is insufficient to support such an inference, on its own. *State v. Brockob*, 159 Wn.2d at 328, *as amended* (Jan. 26, 2007); *State v. Aten*, 130 Wn.2d 640, 655-56, 927 P.2d 210 (1996). The State must present evidence independent of the incriminating statement that the crime the defendant described in the statement actually occurred. *State v. Brockob*, 159 Wn.2d at 328. This independent evidence need not establish the corpus delicti beyond a reasonable doubt, or even by a preponderance; a prima facie showing is sufficient. *State v. Meyer*, 37 Wn.2d 759, 763-64, 226 P.2d 204 (1951). When such independent evidence exists, the defendant's statements may properly be considered to establish the corpus delicti. *State v. Aten*, 130 Wn.2d at 662. A defense attorney who fails to object to statements on corpus delicti grounds is not ineffective where the motion

would not have prevailed. *State v. Cardenas-Flores*, 194 Wn. App. 496, 374 P.3d 1217 (2016), *aff'd*, 189 Wn.2d 243, 401 P.3d 19 (2017).

To determine if there is sufficient independent evidence under the corpus delicti rule, we review the evidence in the light most favorable to the State. *State v. Cardenas-Flores*, 194 Wn. App. at 517, *aff'd*, 189 Wn.2d 243 (2017). Before doing so, we note the Facebook messages were pre-crime statements expressing a future intent rather than describing an act or crime that had already taken place. Pre-crime statements may be considered in establishing corpus delicti. *See State v. Pietrzak*, 110 Wn. App. 670, 41 P.3d 1240 (2002).

McBride's Facebook messages show his intent to bring "Pauline" methamphetamine. These messages, coupled with his action of driving to "Pauline's" designated meetup location with methamphetamine on his person, establish a prima facie case of possession with intent to deliver. Defense counsel was not ineffective for failing to raise a corpus delicti challenge.[2]

---

[2] McBride also argues that without consideration of his Facebook messages and his statements during arrest, there is insufficient evidence for a jury to find him guilty of possession with intent to deliver a controlled substance. Since we reject McBride's corpus delicti challenge, we need not address this issue.

*Trial Preparation*

McBride argues defense counsel violated his right to effective assistance of counsel by failing to adequately prepare for trial. He asserts counsel (1) failed to review discovery with him, (2) failed to interview the government's witnesses, (3) failed to interview Baird despite McBride's request to do so, (4) failed to collect the government's body camera footage prior to the CrR 3.5 hearing and only did so shortly before trial, (5) likely failed to review the body camera footage in its entirety, (6) failed to request a continuance of the trial date, (7) failed to bring a CrR 3.6 motion to suppress, (8) and failed to raise corpus delicti to challenge the admission of McBride's incriminating statements.

To prevail on a theory that defense counsel was ineffective due to a lack of preparation, including failing to interview witnesses, McBride must show prejudice. *In re Pers. Restraint of Davis*, 152 Wn.2d at 739 . We find the record insufficient to support most of McBride's allegations. However, even if the allegations were true, McBride does not show prejudice.

McBride does not point to any information demonstrating defense counsel did not go through the discovery with him, nor does he cite any legal authority establishing that defense counsel performs deficiently by failing to review the discovery with the

defendant. For these reasons, we decline to review this issue. RAP 10.3(6); *Helmbreck v. McPhee*, 15 Wn. App. 2d 41, 68, 746 P.3d 41 (2020); *Johnson v. Lake Cushman Maint. Co.*, 5 Wn. App. 2d 765, 781, 425 P.3d 560 (2018); *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wn. App. 474, 486, 254 P.3d 835 (2011). McBride likewise does not point to any information establishing defense counsel failed to interview the State's witnesses or declined to interview Baird. However, even if these allegations were true, McBride does not show that a more thorough investigation would have produced useful information not already known to defense counsel. *See In re Pers. Restraint of Davis*, 152 Wn.2d at 739.

As to McBride's contention his counsel failed to obtain the bodycam footage prior to the CrR 3.5 hearing and possibly didn't review it in its entirety prior to trial, McBride is unable to show prejudice. We have already found that the Baird video would not have assisted McBride with any motion to suppress or in his entrapment defense. McBride also cannot show a more thorough review of the footage from his arrest could have somehow assisted him.

*"Sharing" Theory*

McBride argues defense counsel violated his right to the effective assistance of counsel by arguing to the jury that intending to share drugs does not equate to intending

to deliver drugs. On this issue, we agree with McBride that his counsel performed deficiently. However, we disagree that there was a reasonable probability that the result of the proceeding would have been different had defense counsel not advocated this theory to the jury.

McBride presented two defenses at trial. First, he attempted to argue he was not guilty of possession with intent to deliver methamphetamine because the evidence only showed he intended to share the drug with "Pauline." Second, McBride argued he was entrapped into committing a crime he otherwise had no intention of pursuing. During opening statements, defense counsel argued that the evidence would only show that McBride traveled to the meet-up location to *share* the methamphetamine with "Pauline," not that he intended to *deliver* it. RP at 96. During closing argument, defense counsel argued that sharing an item is not the same as transferring possession of the item.

The State concedes that intending to share a consumable item with someone meets the legal definition of intending to deliver it to them. The State argued as much during its closing. Defense counsel's tactical decision to argue the contrary to the jury is unsupportable and constitutes deficient performance. However, we find this error harmless. The jury heard McBride's statements, both the pre-arrest Facebook messages where he agreed to sell "Pauline" methamphetamine, and his post-arrest statement to law

18

enforcement that he only intended on sharing it.  McBride arrived at the meet-up location with methamphetamine.  We conclude there is no probability the result of the proceeding would have differed had counsel not argued his incorrect theory of the law on the meaning of "delivery."

*Sentencing*

McBride next argues his right to the effective assistance of counsel was violated by his attorney's conduct, or lack thereof, as it relates to sentencing.

First, McBride argues defense counsel was deficient for failing to request an exceptional sentence downward given that the failed defense of entrapment is a statutory mitigating factor supporting a lenient sentence, and the de minimus amount of methamphetamine is a non-statutory factor supporting such a sentence.

Under RCW 9.94A.535(1)(d), the court may impose an exceptional sentence below the standard range if it finds by a preponderance of the evidence that "[t]he defendant, with no apparent predisposition to do so, was induced by others to participate in the crime."  A court may impose an exceptional sentence downward based on a failed entrapment defense.  *State v. Jeannotte*, 133 Wn.2d 847, 852, 947 P.2d 1192 (1997).

In a declaration attached as an exhibit to the personal restraint petition, McBride's attorney states he did not ask the sentencing court to impose an exceptional sentence

downward because, based on the small amount of methamphetamine involved and the particular sentencing judge, counsel did not believe a request for such a sentence would have been granted. Counsel's declaration shows his decision to not seek an exceptional sentence downward was made for strategic purposes.

Even if we were to assume that counsel's performance was deficient in this regard, McBride was not prejudiced. The court, aware of the facts presented at trial, had "the discretion to impose an exceptional sentence downward with or without counsel's request." *State v. Hernandez-Hernandez*, 104 Wn. App. 263, 266, 15 P.3d 719 (2001). Yet, despite defense counsel's request for a low-end sentence of 60 months, the sentencing court still imposed 90 months. We conclude McBride was not actually and substantially prejudiced by defense counsel's failure to seek an exceptional sentence downward.

McBride next argues he was eligible for a DOSA and his counsel was therefore ineffective for failing to request it. We disagree. "Even if a defendant is eligible for DOSA, the decision to impose a DOSA rests in the sentencing court's discretion." *State v. Smith*, 142 Wn. App. 122, 129, 173 P.3d 973 (2007). Decisions of the trial court as to whether to grant or deny a DOSA are generally not reviewable, but a defendant may challenge the procedure used to impose their sentence. *State v. Grayson*, 154 Wn.2d 333,

338, 111 P.3d 1183 (2005). If defense counsel chooses not to seek a DOSA at sentencing for strategic reasons, such as believing the sentencing court would not impose a DOSA even if requested, defense counsel's performance is not deficient. *State v. Runge*, No. 34371-5-III (Wash. Ct. App. May 2, 2017).[3] ("Mr. Runge's ineffective assistance claim fails because defense counsel's failure to request a DOSA was reasonably strategic. Defense counsel likely made the accurate assumption that the sentencing court would not be inclined to impose a DOSA. Accordingly, it was more effective to seek a low-end sentence. But in any event, Mr. Runge cannot show prejudice.")

In defense counsel's declaration, he states he did not seek a DOSA for the same reason he did not seek an exceptional sentence downward—the likelihood of succeeding on that request was minimal given the particular sentencing judge and the fact that the amount of methamphetamine was small. In other words, he had strategic reasons to not request a DOSA. It follows that his performance was not deficient. However, even if we were to assume that counsel's performance was deficient in failing to seek a DOSA at sentencing, McBride was not prejudiced by this failure for the same reasons we are not persuaded by his exceptional sentence arguments.

---

[3] *See* GR 14.1

CONCLUSION

We conclude the State did not violate McBride's constitutional right to present a

defense or to a fair trial by not disclosing bodycam footage. We further conclude

McBride's counsel's performance satisfied the effective assistance standard, or McBride

is unable to show prejudice. Accordingly, we deny McBride's personal restraint petition.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Hill, J.

WE CONCUR:

_____        _____
Staab, A.C.J.                                                   Cooney, J.

22